NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-4793-17T3

STATE OF NEW JERSEY,

     Plaintiff-Respondent,

v.

RONALD J. SNEARLING,

     Defendant-Appellant.

_____

Submitted December 3, 2019 – Decided December 11, 2019

Before Judges Fisher and Gilson.

On appeal from the Superior Court of New Jersey, Law Division, Monmouth County, Indictment No. 17-05-0645.

Joseph E. Krakora, Public Defender, attorney for appellant (Michele Erica Friedman, Assistant Deputy Public Defender, of counsel and on the brief).

Christopher J. Gramiccioni, Monmouth County Prosecutor, attorney for respondent (Monica Lucinda do Outeiro, Assistant Prosecutor, of counsel and on the brief).

PER CURIAM

After the denial of his motion to suppress evidence, defendant pleaded guilty to third-degree aggravated assault, N.J.S.A. 2C:12-1(b)(2), and second-degree eluding, N.J.S.A. 2C:29-2(b), and was sentenced to concurrent five-year prison terms. He appeals and argues, in a single point, that the judge's basis for finding defendant and co-defendant Williams "were the individuals in the store surveillance video was clearly erroneous in light of the record." We find insufficient merit in this argument to warrant a detailed discussion in a written opinion, R. 2:11-3(e)(2), and affirm the denial of defendant's suppression motion substantially for the reasons set forth by Judge Vincent N. Falcetano, Jr., in his thorough written opinion. We add only a few brief comments.

The judge's denial of defendant's suppression motion was based not only on a surveillance video, or the judge's interpretation of what was captured on the video, but on considerable additional evidence, including the testimony of five police officers, all of whom provided, in Judge Falcetano's words, "clear, candid, and convincing" testimony. The police testimony revealed that defendant was first encountered during a disturbance in front of a pizzeria on Springwood Avenue in Asbury Park. On arrival, officers directed the crowd,

which included defendant and Williams,[1] to disperse. An officer's motor vehicle recording device (MVR) captured images of defendant and Williams getting into a black Traverse and driving off.

A few minutes later, a police officer spoke with the teenage victim, who said he was "poked," meaning stabbed, as was confirmed by the fact that the victim was bleeding from his back. Officers then watched the pizzeria's surveillance video, which depicted the victim's encounter inside the pizzeria. The officers identified the two culprits – defendant and Williams – as the men who had just departed in the Traverse. In his opinion, Judge Falcetano agreed that the video reveals that "[defendant] is seen with a silver knife in his hand, and . . . Williams is later seen swinging his arm and striking [the victim] in the back in the area of his wound." In light of what the pizzeria video revealed, and the Traverse's license plate information captured by the MVR, officers sent out a "be on the lookout" communication to surrounding jurisdictions for defendant, Williams, and their vehicle.

Later, one of the officers involved in the investigation at the Springwood Avenue pizzeria was patrolling near another Asbury Park pizzeria when an

---

[1] One of the officers recognized defendant from earlier encounters but did not know his name.

A-4793-17T3

officer drew his attention to a nearby Traverse stopped at a traffic light. The officer recognized this Traverse as the same vehicle defendant and Williams had driven earlier. The officer could also see, through an open window, that defendant was in the driver's seat; his partner spotted Williams in the front passenger seat. As the officers walked toward their vehicle, which was parked near where defendant's Traverse was stopped, the Traverse drove off. The officers entered their vehicle, activated overhead lights, and followed. As they pursued the Traverse, the officers observed the Traverse run stop signs and red lights. The Traverse was moving as fast as eighty-eight miles per hour as it passed through many zones limited to twenty-five miles per hour. Out of concern for public safety, the officers abandoned their pursuit.

A few minutes later, the Traverse was stopped in neighboring Ocean Township. Defendant and Williams were handcuffed and patted down. The pat down of defendant uncovered a silver knife. One of the three women in the vehicle volunteered that she was in possession of a knife, which was described as a folding knife with a three-inch silver blade.

Based on these and other findings, the judge concluded that the officers conducted a lawful and constitutional warrantless search. In appealing, defendant mainly focuses on the judge's finding that defendant and Williams

A-4793-17T3

were depicted in the pizzeria video whereas, according to defendant, "the men's faces on the video are far from clear" and "there was simply no way for the court to determine, with any sense of certainty," that defendant and Williams "were the men on the surveillance video."

Defendant's argument misses the point. The judge's finding about what was revealed by the pizzeria video was not entirely based on what the judge found from having viewed the video. The judge's finding was undoubtedly influenced and bolstered by the credible testimony provided by the officers as to what they saw in the video and their own encounters with defendant and Williams shortly before. And the judge's finding was likely enhanced by his having defendant in the courtroom; he was, in this way, able to compare the faces in the video with the defendant in the courtroom. Put in the context of all the credible evidence presented, the judge's findings are entitled to our deference.[2] State v. Robinson, 200 N.J. 1, 15 (2009). We have been offered no principled reason to second-guess the findings rendered here.

Affirmed.

---

[2] We have viewed the video included in the appellate record. The faces of the culprits can be seen. With the additional evidence adduced during the hearing, as well as defendant's presence in the courtroom, we see no reason why the judge could not have also reached the same conclusion the officers reached: that defendant and Williams appear in the video.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION